UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JAMI SOUZA, on behalf of her son and all others similarly situated, and MARY MILLER (a pseudonym), on behalf of her son and all others similarly situated,** | § § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 4:21-CV-2733 |
| **HEALTH CARE SERVICE CORPORATION,** | § § § § | |
| Defendant. | § § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court[1] is Defendant's Opposed Motion to Transfer Venue and Opposed Motion to Stay.[2] Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the Motion to Transfer Venue be **DENIED** and the Motion to Stay be **DENIED AS MOOT**.

**I.    BACKGROUND**

Plaintiffs are Jami Souza and Mary Miller.[3] Souza is suing on behalf of her adult son

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (*See* Dkt. No. 10.)
[2] Dkt. Nos. 23, 25.
[3] Dkt. No. 1 at 2.

pursuant to a duly-executed power of attorney.[4] Miller[5] is also suing on behalf of her adult son as his court-appointed guardian.[6] Defendant Health Care Service Corporation ("HCSC") is a Mutual Legal Reserve Company that issues and administers health insurance plans in five states as a licensee of the Blue Cross Blue Shield Association.[7]

Plaintiff Souza and Plaintiff Miller previously requested coverage for their individual sons' residential behavioral health treatment.[8] HCSC denied both requests.[9] Plaintiffs allege that HCSC denied coverage pursuant to criteria that both contradicted the written terms of their health benefit plans and violated the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA").[10] Plaintiffs, therefore, allege "HCSC breached its fiduciary duties to the Plaintiffs' sons and rendered denials that were arbitrary and capricious, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001- 1461."[11]

This case is similar to *Smith on behalf of Smith v. Health Care Serv. Corp.*, No. 19-CV-7162, 2021 WL 963814 (N.D. Ill. Mar. 15, 2021). The plaintiffs in *Smith* made the same allegations against HCSC[12] as Souza and Miller have made in instant case. HCSC moved to dismiss the complaint in *Smith*, arguing that HCSC was not a proper defendant for a denial-of-benefits claim.

---

[4] *Id.*
[5] "Because of the nature of her son's mental illness, Plaintiff Miller has legitimate concerns about publicly disclosing her or her son's identity. Thus, Plaintiff Miller has chosen to file this action pseudonymously, using the name 'Mary Miller.'" (*Id.* at 1 n.1.)
[6] *Id.* at 2.
[7] *Id.* at 2–3.
[8] *Id.* at 2.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] The plaintiff in *Smith* also sued MCG Health, LLC in her original complaint, but eventually dropped it as a defendant after amending her complaint twice. *Smith*, 2021 WL 963814, at *7 n.2.

*Id.* at *3. Plaintiffs' counsel in *Smith*, which is the same counsel representing Souza and Miller, asserted that plaintiffs' were not "seeking to recover benefits due" under the terms of their health plans.[13] In response, HCSC argued plaintiffs' argument created a standing issue because, if true, plaintiffs had not alleged an injury-in-fact under Article III. *See id.* The parties then briefed the standing issue. *See id.*

Meanwhile, Souza and Miller, Plaintiffs in the instant case, moved to intervene in *Smith* and asserted that their case was identical to Smith's case. Plaintiffs made several comparisons in their motion to intervene, stating that: (i) "the legal and factual questions" raised in their proposed intervenor complaint are "identical" to those at issue in Smith; (ii) "there are no material factual or legal questions pertinent to the Intervenor Plaintiffs' claims against HCSC that are not already at issue" in *Smith*; and (iii) the harm suffered by Plaintiffs "is identical to the harm suffered by" Ms. Smith, and by the putative class members that the current Plaintiff seeks to represent.[14]

While the motion to intervene was pending, the court dismissed *Smith* without prejudice for lack of Article III standing and struck the motion to intervene without prejudice as moot.[15] *Id.* at *6. The court allowed Smith the opportunity to file a third amended complaint to try to cure the standing issue, but Smith never amended the complaint or appealed her case.[16] *See id.* As a result, the court converted its dismissal of the second amended complaint into a dismissal with prejudice.[17]

Five months after the *Smith* case was dismissed, Souza and Miller filed the instant case in

---

[13] Dkt. No. 24 at 153.
[14] *Id.* at 52, 57.
[15] *Id.* at 229.
[16] *Id.* at 230.
[17] *Id.*

the Southern District of Texas.[18] Plaintiffs assert claims on behalf of a class for: (i) breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(1)(B); (ii) arbitrary denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); and (iii) violations of MHPAEA, 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1185a.[19] These are the same claims as seen in *Smith* with the addition of the MHPAEA claim.

Rather than answer the complaint, HCSC moved to transfer the case pursuant to 28 U.S.C. § 1404(a), asserting that the United States District Court for the Northern District of Illinois is a more appropriate venue for this dispute.[20] HCSC also filed a Motion to Stay the case pending resolution of the motion to transfer.[21] On October 8, 2021, the Court stayed the case until the Court could evaluate the merits of the Motion to Stay and issue a final ruling.[22]

## II.     LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts have broad discretion in deciding whether to transfer a case under Section 1404(a). *In re Volkswagen of Am., Inc*, 545 F.3d 304, 311 (5th Cir. 2008). "The party seeking transfer has the burden of showing good cause," or that the destination venue is "'clearly more convenient than the venue chosen by the plaintiff.'"[23] *Bennett v. Moran*

---

[18] Dkt. No. 1.
[19] Dkt. No. 1 at 27–32.
[20] *See* Dkt. No. 23.
[21] Dkt. No. 25.
[22] Dkt. No. 26.
[23] A plaintiff's choice of venue is generally accorded weight through this good cause requirement. *Ojeda Fausto v. Parko Grp., LLC*, No. 18-CV-323, 2019 WL 6686678, at *2 (S.D. Tex. Oct. 31, 2019) ("[T]he plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is 'clearly more convenient' than the transferor venue."), *report*

*Towing Towing Corp.*, 181 F. Supp. 3d 393, 397–98 (S.D. Tex. 2016) (quoting *Volkswagen*, 545 F.3d at 315)).

To show good cause, the moving party must "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id.* (cleaned up) (quoting 28 U.S.C. § 1404(a)). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id.* The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors. *See Volkswagen*, 545 F.3d at 315.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* (quotations and citations omitted); *accord Bennett*, 181 F. Supp. 3d at 398. These factors "are

---

*and recommendation adopted*, 2019 WL 6683092 (Dec. 6, 2019). However, a plaintiff's choice receives less deference where "most of the operative facts occurred outside the district." *Standard Innovation Corp. v. LELOi AB*, No. 11-CV-4172, 2015 WL 6396057, at *2 n.21 (S.D. Tex. Oct. 21, 2015) (quotations omitted). A majority of the events giving rise to this action occurred outside of Texas, and thus Plaintiffs' choice in venue is not accorded deference.

not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* "Courts are not to merely tally the factors on each side." *Adams v. Experian Info. Servs., Inc.*, No. 4:21-CV-069, 2021 WL 4891381, at *2 (E.D. Tex. Oct. 20, 2021) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013)). Rather, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of 'clearly more convenient.'" *Quest NetTech*, 2019 WL 6344267, at *7 (citing *In re Radmax*, 720 F.3d at 290 (holding that, where five factors were neutral, two weighed in favor of transfer, and one weighed "solidly" in favor of transfer, the movant had met its burden)).

### III. ANALYSIS

The parties do not dispute that this case could have been brought in the Northern District of Illinois, and therefore, the question of whether this case should be transferred turns on whether HCSC has shown the Northern District of Illinois to be "clearly more convenient" than the Southern District of Texas. *See Volkswagen*, 545 F.3d at 312, 315; *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). To meet its burden of showing that the Northern District of Illinois is clearly more convenient, HCSC must show that the private and public interest factors on balance weigh in favor of transfer. *See Volkswagen AG*, 371 F.3d at 203. Of the eight factors, HCSC argues that five weigh in favor of transfer and three factors are neutral. The Court will address each factor in turn.

1. <u>The Relative Ease of Access to Sources of Proof</u>

HCSC contends that this factor weighs in favor of a transfer because a majority of the evidence in the case can be found in the Northern District of Illinois whereas "almost none of it"

is in the Southern District of Texas.[24] Plaintiffs argue that all of HCSC's evidence is electronically stored, meaning its burden in producing documents in discovery will be the same in this District as it would be in the Northern District of Illinois.[25] Plaintiffs further argue that their relevant documents are stored outside of the Northern District of Illinois—Plaintiff Souza's relevant documents are electronically stored in this District and Plaintiff Miller's relevant documents are stored in Oklahoma.[26]

This factor turns upon "the volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009). However, the Court agrees with Plaintiffs that, "given the ubiquity of electronic data, the Court [should] give[] less weight to these facts." *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-CV-964, 2017 WL 1022741, at *3 (E.D. Tex. Mar. 16, 2017). Accordingly, the Court finds this factor is neutral.

   2. The Familiarity of the Forum with the Law that Will Govern the Case

HCSC argues that the Northern District of Illinois is already familiar with the law governing this case given that it previously decided the *Smith* case and reviewed more than 50 pages of briefing in resolving the case.[27] Plaintiffs contend that their case involves claims brought under federal statutes and this Court is just as capable of resolving those issues.[28] Further, Plaintiffs argue the *Smith* dismissal only considered the narrow standing issue.[29] The Court agrees with

---

[24] Dkt. No. 23 at 19.
[25] Dkt. No. 29 at 17.
[26] *Id.* at 17–18.
[27] Dkt. No. 23 at 20.
[28] Dkt. No. 29 at 23–24.
[29] *Id.*

Plaintiffs. This Court is "as well-positioned as any other federal court" to resolve the instant case. *Grp. 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:20-CV-1290, 2020 WL 4004604, at *6 (S.D. Tex. July 15, 2020). Further, as Plaintiffs argue, the *Smith* court neither addressed Plaintiffs' arguments nor Plaintiffs themselves. Accordingly, the Court finds this factor is neutral.

    3.   The Interest in Having Localized Interests Decided at Home

HCSC argues that the Northern District of Illinois has more of a localized interest in this action than any other court because HCSC is an Illinois Mutual Reverse Company, its corporate headquarters are in Chicago, Illinois, and more than half of its employees are based out its Chicago headquarters.[30] Further, HCSC argues that Plaintiffs' complaints regarding HCSC's decision to utilize the Guidelines was a decision that took place in Chicago.[31]

Plaintiff Souza contends that HCSC fails to recognize that Texas is where her son was injured by HCSC's use of the Guidelines to deny him coverage, which would weigh against transfer. In its reply, HCSC argues there is no showing that Plaintiff Souza's son's injury occurred in the Southern District of Texas.[32] Moreover, HCSC argues that the claims were denied *outside* the Southern District of Texas while Plaintiff Souza's son was at a residential treatment facility in Utah.[33] Alternatively, Plaintiffs acknowledge there are factual connections to the dispute in both locations, but maintain that a neutral factor is still not enough to support a transfer.[34]

The local interest factor "analyzes the factual connection that a case has with both the transferee and transferor venues," as "jury duty is a burden that ought not to be imposed upon the

---

[30] Dkt. No. 23 at 20.
[31] *Id.*
[32] Dkt. No. 31 at 6.
[33] *Id.*
[34] Dkt. No. 29 at 23.

people of a community which has no relation to the litigation." *Fujitsu Ltd.*, 639 F. Supp. 2d at 769 (quotations and alterations omitted); *see also ESI/Employee Sols., L.P. v. City of Dallas*, No. 19-CV-570, 2019 WL 5684668, at *5 (E.D. Tex. Oct. 31, 2019). The Northern District of Illinois has an interest in this case as HCSC has its headquarters and a large number of employees there. *See GeoTag, Inc. v. Starbucks Corp.*, No. 2:10–CV–572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (noting that local interest "arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community"). However, the Southern District of Texas also has an interest in this case as Plaintiff Souza is a Texas resident. *See Rittinger v. Healthy All. Life Ins. Co.*, No. 4:16-CV-639, 2016 WL 5404769, at *8 (S.D. Tex. July 27, 2016), *report and recommendation adopted*, No. 4:16-CV-639, 2016 WL 5404656 (S.D. Tex. Sept. 26, 2016). Therefore, the Court finds this factor is neutral.

4. <u>The Cost of Attendance for Witnesses</u>

HCSC contends that the majority of HCSC's potential witnesses—including Plaintiff Miller, her son, all of Plaintiffs' providers, and HCSC employees—are outside of the Southern District of Texas.[35] Plaintiffs argue that HCSC's generalized statements are not enough to establish a showing under this factor as HSCS fails to identify any key non-party witnesses in the Northern District of Illinois.[36] Conversely, Plaintiffs note that Plaintiff Souza is a Texas resident and would have to incur costs if the case was transferred.[37] Plaintiff Miller will incur expenses regardless of the venue, but Plaintiffs argue HCSC still fails to show how the Northern District of Illinois would

---

[35] Dkt. No. 23 at 21.
[36] Dkt. No. 29 at 18.
[37] *Id.* at 20.

be clearly more convenient for Plaintiff Miller.[38] HCSC argues that it is not required to name a specific number of witnesses by name to satisfy Section 1404(a).[39]

"Defendants seeking a transfer cannot carry their burden by merely making unsupported assertions, but rather they must properly establish relevant venue facts by affidavit, deposition or otherwise." *Sec. & Exch. Comm'n v. Blackburn*, No. 4:14-CV-812, 2015 WL 11120724, at *2 (E.D. Tex. June 30, 2015). Here, Flavia Duffy, HCSC's Vice President Shared Services, provided a declaration that stated:

> 7. The decision to license the Guidelines was made at the corporate level by HCSC employees who were employed at HCSC's headquarters in Chicago, Illinois. The Master License Agreement was executed by Justine Knizeski, whose title was Vice President and Chief Procurement Officer and who worked for HCSC in Chicago, IL.
> 8. Since HCSC initially licensed the Guidelines, the license agreement has been amended five times: on July 1, 2014, April 9, 2017, February 2, 2018, October 14, 2019, and February 2, 2021. The vast majority of the HCSC employees that approved and executed these amendments were or are located at HCSC's headquarters in Chicago, Illinois. None of the employees involved in negotiating these amendments were or are located in the Southern District of Texas.[40]

"[W]hile witnesses may not be identified by specific name or testimony in the declaration," the Court finds Duffy's testimony is sufficient and does not amount to speculation or unsupported assertions. *See id.*; *see also Goodman Co., L.P. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (finding defendants failed to meet the burden when it did not "describe the nature or relevance of any testimony its witnesses . . . would offer, or identify any third parties.").

---

[38] *Id.* at 20 n.1.
[39] Dkt. No. 31 at 6.
[40] Dkt. No. 23-1 at 3–4.

Plaintiffs argue HCSC is merely shifting the inconvenience of the venue to Plaintiffs, and they are correct that "[a] case should not be transferred if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman*, 396 F. Supp. at 776 (citation omitted). However, the Court disagrees with Plaintiffs' argument. While Plaintiff Souza may be inconvenienced, the effect on Plaintiff Miller is neutral. Plaintiffs also argue some HCSC employees are located in Texas and Oklahoma, but such witnesses can be compelled by HCSC to attend the trial as their employees. *See Boutte v. Cenac Towing, Inc.*, 346 F. Supp. 2d 922, 933 (S.D. Tex. 2004) ("The convenience of witnesses who are also employees of a defendant are entitled to less weight, because the defendant can compel their testimony at trial."); *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (finding an argument regarding the employees of the party requesting a transfer unpersuasive); *see also Bolden v. Apache Corp.*, No. G-04-CV-345, 2005 WL 1653057, at *2 (S.D. Tex. July 9, 2005) (finding a transfer would shift the inconvenience to the plaintiff's witnesses because "the overwhelming number of the important non-party, non-expert witnesses" lived in a different state). Accordingly, the Court finds this factor weighs in favor of transfer.

5. Other Practical Problems

HCSC contends that "judicial efficiency is served by transferring this case to the forum where a nearly identical case, brought on behalf of the same putative class, has already been considered and adjudicated."[41] Plaintiffs argue that the *Smith* case was dismissed on a narrow standing issue that was based on different factual allegations and is not binding on Plaintiffs.[42]

---

[41] Dkt. No. 23 at 21.
[42] Dkt. No. 29 at 21.

Further, Plaintiffs argue that the *Smith* case "was no more advanced than this case" and, thus, there is no efficient advantage to transferring the instant case.[43]

Courts should consider judicial economy under this factor, and "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Fujitsu Ltd.*, 639 F. Supp. 2d at 768. Stated another way, if similar cases exist within a particular district, courts should consider "the effectiveness of coordinated handling with the related cases." *Cormier v. Island Operating Co. of Texas*, No. H-14-3467, 2015 WL 13649827, at *4 (S.D. Tex. June 25, 2015).

There are no practical problems that make trial easy, expeditious, or inexpensive in either forum. "This case is in its early stages, and therefore, no practical problems exist that would deter this Court from transferring this litigation." *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-CV-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016). As Plaintiffs argue, this case is no more advanced than the *Smith* case, which stayed all discovery prior to dismissal. *See id.* (finding no practical problems even when discovery had already begun); *see also Rittinger*, 2016 WL 5404769, at *8 (finding no practical problems when "[t]he parties have not progressed to discovery, and proceedings remain at an early stage."); *Stingray Music*, 2017 WL 1022741, at *4 (finding the practical problems strongly weighed against transfer because there would be overlap in discovery and issues would be better handled by a presiding court with institutional knowledge).

HCSC compares the instant case to *Kurtz v. Intelius, Inc.*, No. 2:11-CV-01009, 2011 WL

---

[43] *Id.* at 22.

4048645 (E.D. Cal. Sept. 9, 2011).[44] The *Kurtz* Court, located in the Eastern District of California, recognized that the Central District of California was already "intimately familiar with the issues in the case" as an identical case had previously been filed there by the same attorneys. *Id.* at *2. The Court finds the *Kurtz* case is distinguishable. The instant case is not "exactly the same lawsuit" as seen in *Smith*. *Smith* did not involve MHPAEA claims and, while Plaintiffs filed a motion to intervene in the *Smith* case, the motion was never considered and Plaintiffs never became parties. At this stage, the Northern District of Illinois is no more familiar with the issues in this case than the Southern District of Texas.[45] Accordingly, the Court finds this factor is neutral.

      6.   Availability of Compulsory Process

HCSC states that this factor is neutral as the "treatment centers whose claims were allegedly denied are not located within 100 miles of the Southern District of Texas nor the Northern District of Illinois" and are outside the subpoena power of either court.[46] Plaintiffs do not disagree. Accordingly, the Court finds this factor is neutral.

      7.   Administrative Difficulties Flowing From Court Congestion

HCSC states that this factor is neutral as both the Southern District of Texas and the Northern District of Illinois are congested.[47] However, Plaintiffs argue there is a substantial

---

[44] Dkt. No. 23 at 17.
[45] HCSC also argues the case would be assigned to the same judge who oversaw the *Smith* case if transferred to the Northern District of Illinois and cites to a case previous handled by Defendant's law firm for support. (Dkt. No. 31 at 7.) The Court reviewed the filings in the previous case and, again, finds the case distinguishable. The instant case does not involve the same Plaintiffs from *Smith*. Therefore, the Court does not believe that the instant case would be automatically assigned to the same judge who oversaw *Smith* if transferred to the Northern District of Illinois. Rather, it is more likely that the case would be randomly assigned to a judge. LCrR. 40.1.
[46] Dkt. No. 23 at 21.
[47] *Id.* at 21–22.

difference between the Southern District of Texas and the Northern District of Illinois as "the median time from filing to disposition for civil cases in the Northern District of Illinois is 14.2 months, much longer than the 8.7 months for civil cases in [the instant] District."[48] Further, "the median time from filing to trial for civil cases [in the Northern District of Illinois] is 48.1 months, more than double the 21.1 months for civil cases in [the Southern] District [of Texas]."[49]

The focus of this factor is "not whether [transfer] will reduce a court's congestion but whether a trial maybe speedier in another court because of its less crowded docket." *Standard Innovation Corp.*, 2015 WL 6396057, at *5 (citation omitted). The Court agrees with Plaintiffs that this factor weighs against transfer. *See id.* (finding the difference of a few months does not weigh for or against transfer).

8. Conflict of Laws

HCSC states that this factor is neutral as the instant case requires the Court to apply federal law.[50] Plaintiffs do not disagree. Accordingly, the Court finds this factor is neutral.

\*           \*           \*

In total, 1 factor weighs in favor of transfer, 6 are neutral, and 1 weighs against transfer. The Court recognizes this is a very close call, but HCSC has not met it's burden to demonstrate that transfer of venue to the Northern District of Illinois is either for the convenience of the parties and witnesses or in the interest of justice. 28 U.S.C. § 1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d at 315 ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."). Accordingly, the Court recommends

---

[48] Dkt. No. 29 at 25.
[49] *Id.*
[50] Dkt. No. 23 at 22.

14 / 15

that transfer under 28 U.S.C. § 1404(a) to the Northern District of Illinois is inappropriate.

## IV.     CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** the Motion to Transfer Venue be **DENIED**. The Court **FURTHER RECOMMENDS** the Motion to Stay be **DENIED AS MOOT**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on January 11, 2022.

Sam S. Sheldon
United States Magistrate Judge